UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KENRIC L. REDFEARN,                               Case No. 19-10014-t13

      Debtor.

## OPINION

    Debtor objected to his ex-wife's proof of claim. The issue is whether Debtor's obligation to make "equalization payments" to his ex-wife under a marital settlement agreement is a property settlement (dischargeable in chapter 13) or a domestic support obligation (nondischargeable). The Court tried the matter and concludes that the debt is for domestic support. Debtor's objection therefore will be overruled.

I.     FACTS

The Court finds:[1]

Debtor and Regina Redfearn were married from March 2006 until March 2018. Regina had three children from a previous marriage. There are no children of the marriage, although Debtor and Regina raised Regina's youngest child together from the time she was three.

Debtor filed for divorce in March 2016. At the time, Regina worked at a grocery store in Ruidoso, earning $11.10 per hour, while Debtor worked full time at a hospital in Alamogordo,

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

earning $15 per hour. Debtor also had self-employment income of approximately $1,200 per month. Debtor's monthly income was about $3,800, while Regina's was about $890.[2]

Under the Interim Order, Debtor was required to pay Regina $254.24 a month. This amount was calculated to equalize the parties' monthly net spendable income, taking into account their gross income, deductions, and expenses. Debtor did not make the interim monthly payments as ordered, prompting three motions for contempt. In January 2017 the state court held Debtor in contempt for violating the interim order. At the time, Debtor had made only three payments in eight months and owed Regina $1,271.20.

The divorce was finalized on March 28, 2018, by entry of a Final Decree of Dissolution of Marriage. At the time, Regina was working full time and earning $12.10 per hour. Her income was not enough to pay her bills. For a time she and her 15-year old daughter lived in a house[3] that had no heat, running water, or functioning indoor plumbing. Her car broke down from time to time.

Regina was represented by one lawyer in the divorce proceeding, while Debtor had three lawyers at different times. The lack of continuity in Debtor's representation frustrated Regina and made finalizing the divorce more difficult.

The final decree, which was drafted by Debtor's counsel, incorporated a Marital Settlement Agreement (the "MSA") as an "integral" and "inseparable" part of the decree.[4]

The MSA provides in relevant part:

---

[2] The monthly income figures are from an Interim Order Allocating Income and Expenses, entered in the divorce proceeding on May 19, 2016 (the "Interim Order"). The Interim Order was approved by both parties. Regina apparently was working part-time at the grocery store when the Interim Order was entered.
[3] The house is owned by her mother. Regina had no mortgage or rent payment but had to pay property taxes, utilities, and maintenance costs.
[4] Regina testified that she agreed to the MSA in part because her lawyer threatened to quit if she refused.

> 1. . . . The parties desire to resolve all issues between them regarding their children and the division of community property and the allocation of community debt.
> . . . .
> 5. SPOUSAL SUPPORT. Each party, now and forever, waives the right to receive alimony or spousal support from the other party.
> 6. COMMUNITY PROPERTY OF THE PARTIES
>     A. The parties agree that Wife shall take as her division of community property:
>         1. 2006 RAV
>         2. All personal property in her possession.
>     B. The parties agree that Husband shall take as his division of community property:
>         1. The remaining vehicles in his possession.
>         2. All personal property presently in his possession.
> . . . .
> 7. COMMUNITY DEBTS OF THE PARTIES.
> . . . .
>     A. Wife shall take as her division of community debt the following
>         1. All credit cards in her name only.
>         2. The I.R.S. debt from 2012.
>     B. Husband shall take as his division of community debt the following:
>         1. Debt on the 2006 Travel Trailer, if any.
>         2. The debt against his 401 K and 403 B plan.
>         3. Debt to Liberty Mutual in the approximate amount of $846.82 for automobile insurance.
> . . . .
> 9. EQUALIZATION PAYMENT. To equalize the distribution of community assets and debts as well as for all past due interim payments and for any other issues brought before the court, Petitioner, Kenric Refearn (sic), shall pay to Respondent, Regina Redfearn, a lump sum payment of Twenty-Five Thousand Dollars ($25,000). Said payment shall be payable in monthly installments of $500, payable beginning March 1, 2018 and on the first day of each month thereafter, until paid in full.

There was considerable negotiation about the equalization payment. Initially, Regina proposed that Debtor retain more community assets while she paid more community debts. The proposal would have increased the equalization payment Debtor owed Regina. Debtor countered with a proposal that would give Regina more community assets and fewer community debts, resulting in an equalization payment from Regina to him. Ultimately, the parties agreed to Regina's

approach, i.e., Debtor got more assets and less debt,[5] but agreed to a higher equalization payment. The Court finds that Regina's desire for this outcome was driven by her need for support in the form of regular monthly income.

On January 4, 2019, Debtor filed this bankruptcy case. Regina filed a proof of claim on May 29, 2019, for a $20,500 domestic support obligation. Debtor did not object to the amount of the claim but argued that it is for a property settlement, not support

## II. DISCUSSION

A. <u>Dischargeability of Divorce-Related Debts</u>.

Upon completion of all plan payments, a chapter 13 debtor is entitled to a discharge of all debts except those set out in § 1328(a).[6] One class of debts excepted from the chapter 13 discharge is domestic support obligations. *See* §§ 1328(a)(2) and 523(a)(5). In contrast, debts for divorce-related property settlements are dischargeable in chapter 13. *See, e.g., In re Okrepka*, 533 B.R. 327, 333 (Bankr. D. Kan. 2015) (while property settlement obligations are nondischargeable under § 523(a)(15) in a chapter 7 case, they are dischargeable in chapter 13 if all plan payments are made).

B. <u>Distinguishing Between Support and Property Settlement</u>.

A "domestic support obligation" is broadly defined to include any debt that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." § 101(14A)(B).

---

[5] Of particular note is Regina's agreement to pay back taxes of $8,466. The taxes were owed on income from Debtor's independent contracting business, so it seems logical Debtor would have agreed to take on the debt. Instead, Regina did. Had Debtor assumed the IRS debt as part of the MSA, the equalization payment would have been $8,068 rather than $25,000, and the monthly payment would have been $161.36 instead of $500. This bolsters the Court's finding that the purpose of the equalization payment was support.

[6] Unless otherwise stated, all statutory references are to 11 U.S.C.

Whether a debt is a domestic support obligation is a question of federal law. *In re Sampson*, 997 F.2d 717, 721 (10th Cir. 1993), citing *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir. 1989). The Court is not bound by the label ascribed to the debt by the parties, 997 F.2d at 722, nor by one party's "post hoc explanation as to his or her state of mind at the time of the agreement." *Id.* at 723.

The inquiry is fact-specific and must be decided on a case by case basis. *In re Bristow*, 2005 WL 1321996, at *3 (Bankr. M.D.N.C. 2005); *Okrepka*, 533 B.R. at 334 (inquiry must be made on a case-by case basis); *In re Waller*, 525 B.R. 473, 479-80 (Bankr. D. Kan. 2014) (same); *In re Skaggs*, 2003 WL 23838133, *3 (Bankr. D. Kan.) (same).

Interpreting marital settlement agreements under federal bankruptcy law "promotes nationwide uniformity of treatment between similarly situated debtors . . . and furthers § 523(a)(5)'s underlying policy favoring enforcement of familial support obligations over a debtor's 'fresh start.'" *Sampson*, 997 F.2d at 722, citing *Shaver v. Shaver,* 736 F.2d 1314, 1316 n.3 (9th Cir. 1984).

The burden of proving that a debt is a domestic support obligation is borne by the claimant. *Sampson*, 997 F.2d at 723; *Okrepka*, 533 B.R. at 334.

Properly characterizing the debt can be difficult because parties negotiating and drafting marital settlement agreements are typically focused on non-bankruptcy considerations.

> [I]t is not always easy to distinguish domestic support obligations . . . from property settlement claims. . . .
> Particularly when the debt arises from a negotiated separation agreement, the parties often focus on the state law implications of their agreement, not how the obligation would be characterized in a bankruptcy case. Thus, the bankruptcy court's retrospective inquiry is into the intentions of the parties with respect to an issue that they may not have fully considered. . . .
> State law generally recognizes that the issues of property division and support are inextricably intertwined. State law governing support and division of property takes into account comparable factors—primarily the financial resources

and needs of the parties. . . . A spouse who receives more property may need less support. An obligation denominated as a property settlement may be essential to the support of the recipient of the property. Conversely, an obligation denominated as alimony may be a substitute for property that the obligee would otherwise have received.

4 Collier on Bankruptcy, ¶ 523.11[6] (16th ed.). *See also In re Carrigg*, 14 B.R. 658, 661-62 (Bankr. D.S.C. 1981) (because "the effect of the filing of bankruptcy is not [often] in contemplation when the decree is drafted[,] . . . [t]o hold the parties to the terms of a contract might often ignore the true nature of the debt.").

C. <u>The Tenth Circuit's "Dual Inquiry" Requirement</u>.

In *Yeates v. Yeates (In re Yeates),* 807 F.2d 874 (10th Cir. 1986), the Tenth Circuit emphasized the importance of the language used by the parties in their marital settlement agreement in determining whether a debt is for support: "[I]f the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." 807 F.2d at 878.

The following year the Tenth Circuit decided *Goin v. Rives (In re Goin)*, 808 F.2d 1391 (10th Cir. 1987), which did not cite *Yeates* and held that "a bankruptcy court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." 808 F.2d at 1392.

In *Sampson*, a third Tenth Circuit panel attempted to reconcile *Yeates* and *Goin*:

As a three-judge panel, we are not at liberty to overrule either *Yeates* or *Goin*, but rather we must attempt to reconcile them. Nonetheless, we are confident in pursuing this task because, while the language in the two opinion appears inconsistent, their holdings are entirely consistent.

997 F.2d at 722. *Sampson* went on to articulate a "dual inquiry" standard for determining whether a debt is for domestic support:

> "Because the label attached to an obligation does not control, an unambiguous agreement cannot end the inquiry. As we stated in *Goin*, "a bankruptcy court *must* look beyond the language of the decree to the intent of the parties *and* the substance of the obligation" to determine whether the obligation is actually in the nature of alimony, maintenance or support. . . . Thus, whether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties' intent and the substance of the obligation.

997 F.2d at 722-23. The "dual inquiry" test is the current law in this circuit. *See, e.g., Taylor v. Taylor (In re Taylor),* 737 F.3d 670, 675 (10th Cir. 2013); *In re Chamberlain*, 721 F. App'x 826, 828 (10th Cir. 2018) (citing *Taylor* for the "dual inquiry" test); *Okrepka*, 533 B.R. at 334.

D.  <u>The Intent of the Parties</u>.

"[T]he critical inquiry is the shared intent of the parties at the time the obligation arose." *Sampson*, 997 F.2d at 723, citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir. 1986). The bankruptcy court must look at all of the evidence to determine the parties' intent.

    1.    <u>The Contract Language</u>. "A written agreement between the parties is persuasive evidence of intent." *Sampson*, 997 F.2d at 723, quoting *Yeates*, 807 F.2d at 878 (citation omitted). Although the language of the agreement is accorded some deference, it is not dispositive. *Id.* at 722-23. "[E]ven an obligation designated as property settlement may be related to support." *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990).

Here, the MSA is somewhat inconsistent. Primarily, of course, the MSA states that the parties are capable of supporting themselves and waive the right to alimony or spousal support. Throughout the MSA and the final decree, this position is stated clearly several times.

On the other hand, the equalization payment is for, inter alia, "all past due interim payments." Debtor was ordered to make the interim payments for Regina's support during the pendency of the divorce proceeding. *See* N.M.S.A. § 40-4-7(A) (state court may order support payment during the pendency of the proceeding); *see also Samayoa v. Jodoin (In re Jodoin)*, 196

B.R. 845, 850 (Bankr. E.D. Cal. 1996), affirmed, 209 B.R. 132 (9th Cir. BAP 1997) (the portion of an equalizing payment attributable to unpaid spousal and child support was a domestic support obligation). Thus, at least in part the equalization payment was for Debtor's unpaid support obligation to Regina.

Taken together, the Court finds that the language of the MSA reflects the intent of the parties to waive alimony and support *per se*, but also to provide for monthly equalization payments that would function as Regina's post-divorce support for more than four years.

2. <u>The Surrounding Circumstances</u>. In addition to the contract language, the Court must consider the "surrounding circumstances at the time of the parties' divorce." *Sampson*, 997 F.2d at 725. "Plaintiff's obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement." *Id.*

Here, the circumstances in this case strongly indicate that the monthly equalization payments were intended for Regina's support. This appears to be a situation, not uncommon, where one spouse agrees to take less community property so she can supplement her income with monthly equalization payments. *See, e.g., In re Beach*, 220 B.R. 651, 654 (Bankr. D.N.D. 1998) ("Frequently a division of property is employed as a substitute for alimony by providing a means for the disadvantaged spouse to maintain the basics of living"); *Bristow*, 2005 WL 1321996, at *5 (Bankr. M.D.N.C.) (an agreement pursuant to which the debtor was awarded the bulk of the marital assets and who was obligated to pay his former spouse a monthly distributive award without which the spouse would be unable to pay for necessities was a domestic support obligation); *In re Herbert*, 304 B.R. 67, 76-79 (E.D.N.Y 2004) (an agreement in which the debtor received the spousal residence and another property, but was required to pay his ex-wife $105,000, was a

domestic support obligation because without the payment, the ex-wife would be unable to afford shelter); *Hixson v. Hixson (In re Hixson)*, 23 B.R. 492, 495-96 (Bankr. S.D. Ohio 1982) (debtor's ex-wife's waiver of alimony was at least partially induced by debtor's promise to pay his ex-wife's mortgage and, after the house sold, pay a weekly stipend for one year, both of which were in the nature of domestic support); *In re Johnson*, 397 B.R. 289, 297 (Bankr. M.D.N.C. 2008) ("[A]n obligation that is essential to enable a party to maintain basic necessities . . . constitutes a nondischargeable support obligation."); *see also* 4 Collier on Bankruptcy ¶ 523.11[6][c] (how the parties divide their marital property is relevant to determining whether an obligation is for support); N.M.S.A. § 40-4-7(E)(6) (the state court may consider "the amount of property awarded or confirmed to the respective spouses" when determining spousal support).

The Court finds that the parties intended the equalization payment to be a domestic support obligation.

E.     The Monthly Equalization Payments are in Substance Support.

The Court's second inquiry is into the substance of the equalization payments. As stated in *Sampson*:

> The critical question in determining whether the obligation is, in substance, support is "the function served by the obligation at the time of the divorce." *In re Gianakas,* 917 F.2d 759, 763 (3d Cir. 1990). . . . [I]f an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation.

997 F.2d at 725-26. The Court finds that the monthly equalization payments are in substance support payments. When the divorce was finalized, Regina needed money every month to make ends meet. She was earning $12.10 an hour, not enough to pay her bills. Regina suffered hardship as a result—going, for a period of time, without heat, running water, indoor plumbing, or a working car. Both before and after the final decree was entered, Regina needed financial support to afford

-9-

the bare necessities. During the separation, Regina's need was exacerbated by Debtor's failure to pay monthly interim support.

F.  Weighing the *Goin/Sampson* Factors.

*Goin* listed four factors pertinent to the bankruptcy court's determination of the parties' intent and the substance of the obligation:

> (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.

808 F.2d at 1392-93. These factors were repeated in *Sampson*. 997 F.2d at 722. The Court weighs the *Goin/Sampson* factors in this case as follows:

| Factor | Discussion |
| --- | --- |
| 1. If the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support. | This factor favors a finding of support. Regina and her daughter clearly needed financial support. The monthly payment of $500 supplemented Regina's small monthly income, tax free. |
| 2. When there are minor children and an imbalance of income, the payments are likely to be in the nature of support.[7] | This factor also weighs in favor of a finding of support. Although Regina's youngest daughter is not Debtor's child, he and Regina raised her since the age of three. In addition, there was a substantial imbalance of income. |
| 3. Support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time. | This factor too weighs in favor of a support finding. Debtor was to make the payments directly to Regina. The payments were to be |

---

[7] *See also In re Wehr*, 292 B.R. 390, 399 (Bankr. D.N.D. 2003) (it was highly likely that an obligation is in the nature of support where there is a "significant disparity in the parties' relative financial position at the time of their agreement"); *In re Kline*, 65 F.3d 749, 751 (8th Cir. 1995) (an award of attorney fees was in the nature of maintenance where there was a significant disparity in the income between the non-debtor spouse and the debtor).

| | |
|---|---|
| | over a period of 50 months (slightly more than four years).[8] |
| 4. An obligation that terminates on remarriage or death is indicative of an agreement for support. | This factor weighs against a finding of support. Debtor's obligation to pay the equalization payment would survive Regina's death or remarriage. |

Weighing the *Goin/Sampson* factors reinforces the Court's finding that the monthly equalization payments were intended for, and were in substance, support for Regina. If one party in a divorce makes a lot less money than the other and needs post-divorce support, there is a strong presumption that regular monthly payments to that party are for support, even if the payments equalize an imbalance in dividing community property and debts.

### III. CONCLUSION

There is no question that after the divorce Regina and her daughter needed support. While Regina clearly waived any right to alimony in the MSA and final decree, the 50 monthly payments of $500 required by the MSA were intended to, and did, provide support to Regina. Thus, applying the Tenth Circuit law laid out in *Sampson* to the facts of this case, the Court finds that Regina's claim against Debtor is a nondischargeable domestic support obligation. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 15, 2019
Copies to: electronic notice recipients

---

[8] *See, e.g., In re Voss*, 20 B.R. 598, 602 (Bankr. N.D. Iowa 1982) (six and a half year payment period is substantial); *cf. In re Brandstadt*, 45 B.R. 538, 542 (Bankr. N.D. Ohio 1984) (a five year payment obligation is short term).